IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEAN ANTOINE,
    *Plaintiff*,

    v.

AMICK FARMS, LLC,
    *Defendant*.

Civil Action No. ELH-16-2444

MARIE OLIVINCE, et al.,
    *Plaintiffs*,

    v.

AMICK FARMS, LLC,
    *Defendant*.

Civil Action No. ELH-16-2938

**MEMORADUM OPINION**

Amick Farms, LLC ("Amick") was sued by multiple plaintiffs in three separate cases. The plaintiffs all allege that they were terminated by Amick in violation of the Family and Medical Leave Act of 1993 ("FMLA"), *as amended*, 29 U.S.C. § 2601, *et seq.* ECF 1 in ELH-16-783; ECF 1 in ELH-16-2444; ECF 1 in ELH-16-2938. On December 22, 2016, the parties in *Monfiston v. Amick Farms*, ELH-16-783, filed a stipulation of dismissal, with prejudice. ECF 28 in ELH-16-783. Therefore, that case is now closed. *See* ECF 29 in ELH-16-783; *see also* docket. As to the remaining two cases, captioned above, this Memorandum Opinion resolves three motions.

First, this Memorandum Opinion resolves defendant's "Motion to Dismiss Count III of Plaintiffs' Collective Action and Individual Complaints," filed in *Olivince, et al. v. Amick Farms*, ECF 14 in ELH-16-2938. It is supported by a memorandum. *Id.*, ECF 14-1 (collectively,

"Motion to Dismiss").  Plaintiffs Marie Olivince, Leslie Rios, and Alourde Jean Baptiste oppose the motion (*id.*, ECF 19, "Response"), and Amick has replied.  *Id.*, ECF 20.

Second, this Memorandum Opinion addresses the motions to consolidate filed on September 9, 2016, by plaintiff Jean Antoine in ELH-16-2444 (*id.*, ECF 7) and by plaintiffs Olivince, Rios, and Baptiste in Case ELH-16-2938.  *See id.*, ECF 8.[1]  Each motion is supported by a memorandum (ECF 7-1 and ECF 8-1) (collectively, "Motion to Consolidate").  Defendant opposes the Motion to Consolidate.  ECF 8, ELH-16-2444; ECF 9, ELH-16-2938 (collectively, "Opposition").  Plaintiffs replied.  ECF 11, ELH-16-2444; ECF 13, ELH-16-2938 (collectively, "Reply").

Third, this Memorandum Opinion resolves defendant's motion in *Olivince, et al. v. Amick Farms*, ELH-16-2938, seeking to sever the cases of plaintiffs Olivince, Rios, and Baptiste.  *Id.*, ECF 9 ("Motion to Sever").[2]  Olivince, Rios, and Baptiste oppose the Motion (*id.*, ECF 13), and Amick has replied.  *Id.*, ECF 15.[3]

The motions have been fully briefed and no hearing is necessary to resolve them.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion to Dismiss Count III in ELH-16-2938; I shall grant the Motion to Consolidate; and I shall deny the Motion to Sever.

---

[1] The plaintiff in *Monfiston* (ELH-16-783) also moved to consolidate.  ECF 16 in ELH-16-783.  However, because that case has been dismissed, I shall consider the Motion to Consolidate with respect to the two remaining cases.

[2] The Motion to Sever was filed within each opposition to the various motions to consolidate.

[3] Because virtually identical submissions were filed in all three cases, for convenience I shall cite only to submissions in ELH-16-2444.

## I.    Procedural and Factual Background[4]

### A.  Jean Antoine (ELH-16-2444)

*Antoine v. Amick Farms*, ELH-16-2444, was initiated by Jean Antoine on June 29, 2016. ECF 1 in ELH-16-2444.  Antoine "speaks and reads Haitian Creole." *Id.* ¶ 10.  He worked for Amick farms during two periods – one in 2010 and the second from some time in 2012 to July 2014.  *Id.* ¶ 4.  Beginning in 2012, Antoine worked in the Sanitation Department, where his job duties included "sanitizing evisceration machines, the floors and equipment in the 'kill' rooms, and the floors in other areas in the Amick Farms plant." *Id.* ¶¶ 14-15.

Antoine states that on April 18, 2014, while he was at work, he "was on an eight-foot ladder and using a high-pressure hose when he fell several feet to the ground and injured his back, head and the left side of his body." *Id.* ¶¶ 16-17.  Antoine was taken to the hospital and instructed by his "treating providers at the hospital" not to return to work until he was evaluated further for his injuries.  *Id.* ¶¶ 18, 21.  Thereafter, as a result of his injuries, Antoine suffered continuing pain and other ailments, limiting his ability to work from the date of his injury through July 11, 2014.  *Id.* ¶¶ 22-35.  During this time, Antoine provided the defendant with notes from medical providers confirming his inability to work.  *See id.*  However, defendant never provided Antoine with a notice of his rights under the FMLA in Haitian Creole at any time after he produced his medical records.  *See id.*

Antoine received a termination letter from Amick on July 11, 2014.  *Id.* ¶ 37.  It stated: "Please consider the following notification of termination of employment from Amick Farms, LLC. Effective June 19, 2014. Reason: No Call in 3 Days." *Id.* ¶ 38.  Antoine asserts that he was terminated because "Amick Farms maintains a point system whereby an employee receives a

---

[4] For purposes of the factual summaries, I shall assume the truth of plaintiffs' allegations.

'point' for any absence, even if the absence is for a medical reason.  Under this policy, once an employee reaches a certain number of 'points,' they may be subject to discipline, including termination." *Id.* ¶¶ 39-40.

The Complaint contains three counts.  Antoine claims: (1) that defendant violated the FMLA by terminating him while he was on protected medical leave (*id.* ¶¶ 42-51); (2) defendant retaliated against him as a result of his attempt to exercise his rights under the FMLA (*id.* ¶¶ 52-56); and (3) defendant failed to provide notice of his FMLA rights and eligibility (*id.* ¶¶ 57-62).

### B.  Marie Olivince; Leslie Rios; Alourde Jean Baptiste (ELH-16-2938)

*Olivince et al. v. Amick Farms*, ELH-16-2938, was initiated on August 22, 2016, by Marie Olivince, Leslie Rios, and Alourde Jean Baptiste.  ECF 1 in ELH-16-2938.  The plaintiffs brought individual claims as well as a collective action, pursuant to 29 U.S.C. § 2617, on behalf of all similarly situated employees.  *Id.* at 1-2.[5]

### 1.  Marie Olivince

Olivince was employed by Amick, or companies acquired by Amick, during two periods: first from 1989 until October 26, 2013, and second from October 29, 2013 until September 9, 2016.  *Id.* ¶¶ 20-23, 49.  During the second period, Olivince worked as a "tender clipper" in the "deboning department."  *Id.* ¶ 25.  Olivince "speaks and reads Haitian Creole" and she "is not literate in English."  *Id.* ¶ 19.

Olivince claims that, as a result of the requirements of her job, she "developed severe pain in her wrists."  *Id.* ¶ 28.  She notified defendant on "a regular, if not daily basis, between late 2013 and September 9, 2014" of her severe wrist pain.  *Id.* ¶ 29.

---

[5] As of December 5, 2016, two additional plaintiffs, Ziliane Jolly and Alcius Dieuferne, have been added to the litigation as a part of the collective action.  *See* docket.

In December 2013, defendant asked the National Institute for Occupational Safety and Health ("NIOSH") to conduct an "ergonomic evaluation" for its workforce.  *Id.* ¶ 33.  According to Olivince, NIOSH informed her that "her results from the nerve conduction test were abnormal."  *Id.* ¶ 35.  NIOSH also recommended that she consult with a doctor.  *Id.*

Olivince sought treatment from an orthopedic surgeon on August 1, 2014, who diagnosed her with carpel tunnel syndrome.  *Id.* ¶¶ 40-41.  Olivince notified defendant of her medical condition on numerous occasions and also provided the defendant with numerous documents supporting her claims.  *See, e.g.*, *id.* ¶ 42.  However, defendant never provided her with notice of her rights under the FMLA, in any language.  *See, e.g.*, ECF ¶ 38.

On September 9, 2014, defendant sent Olivince a letter terminating her employment.  *Id.* ¶ 48.  It states: "Please consider the following notification of termination of employment from Amick Farms, LLC. Effective September 4, 2014. Reason: Excessive Absence."  *Id.* ¶ 49.  According to Olivince, she was terminated because Amick "maintains a point system whereby an employee receives a 'point' for any absence, even if the absence is for a medical reason. Under this policy, once an employee reaches a certain number of 'points,' they may be subject to discipline, including termination."  *Id.* ¶ 50-51.

### 2. Leslie Rios

Rios began working for Amick Farms in November 2014.  *Id.* ¶ 53.  For approximately one year, she worked in the "'second cut' leg deboning position" and she was then moved to the "more demanding and strenuous position – 'first cut' leg deboning."  *Id.* ¶ 55-56.  Rios notes that she "speaks and reads Spanish" and that she "is not literate in English."  *Id.* ¶ 52.

Shortly after Rios was moved to the "first cut position" in November 2015, "she started to develop severe pain in her right hand and wrist."  *Id.* ¶ 57.  She subsequently sought medical

evaluation and provided defendant with doctors' notes indicating that she should wear a wrist brace and move to a position that did not require the use of scissors or a knife.  *Id.* ¶ 57-59.

On January 25, 2016, Rios began to rotate between the "first cut" position, which requires the use of a knife, and the "re-work" division, which requires the use of scissors."  *Id.* ¶ 60.  According to Rios, on January 27, 2016, because she "did not have the full capacity of her right hand, she sustained a different injury to her left hand while cutting chicken in the 're-work' division."  *Id.* ¶ 61.  Rios reported the injury to defendant and was instructed to see a doctor to treat her left hand.  *Id.* ¶ 62.  However, Rios continued working until March 4, 2016.  *Id.* ¶ 64-65.  Rios missed work on "at least three occasions to attend doctor's appointments and to get an MRI on her hand."  *Id.* ¶ 66.

Amick issued "a warning letter" to Rios on March 30, 2016, noting her absences and suggesting that "further absences would lead to termination."  *Id.* ¶ 67.  Rios then provided doctors notes to defendant confirming that her absences were medically related, but defendant "refused to excuse those absences . . . ."  *Id.* ¶ 68.  On June 10, 2016, Rios provided defendant with a doctor's note stating that she could not use her left hand and, on June 14, 2016, Rios's doctor informed her that she needed surgery on her right hand.  *Id.* ¶¶ 69-72.  Amick cancelled Rios's medical benefits on June 17, 2016.  *Id.* ¶ 74.  And, Rios claims that after she was cleared by her doctor to return to work in a "light duty" status, defendant responded that there were no light duty jobs for her to do and "instructed her to go home."  *Id.* ¶ 75.

Rios has not worked since "the beginning of June 2016."  *Id.* ¶ 76.  Furthermore, Rios was never provided with a notice of her rights under the FMLA in any language.  *Id.* ¶ 77.

### 3.   Alourde Jean Baptiste

Baptiste worked for defendant, or its predecessor, from 2008 until November 24, 2014. *Id.* ¶¶ 79-80, 105-107.   Baptiste alleges that she speaks Haitian Creole and is not literate in English.  *Id.* ¶ 78.

Beginning in 2010, defendant moved Baptiste to the "wing deboning" division, "where she deboned chicken wings with a knife, which required repetitive movements with her right hand."  *Id.* ¶ 80.  Baptiste alleges: "Over time, the repetitive cutting movements caused severe pain, numbness and tingling in Ms. Baptiste's right hand."  *Id.* ¶ 83.

According to Baptiste, on June 14, 2014, after Amick conducted the NIOSH study, described earlier, she was informed that "her results from the nerve conduction test were abnormal . . . ."  *Id.* ¶ 88.  NIOSH recommended that she consult a doctor.  *Id.*  Baptiste claims that she provided the results of the NIOSH test to defendant in August 2014, but was not provided with notice of her rights under the FMLA.  *Id.* ¶¶ 89-91.

Baptiste sought medical treatment for the pain in her right wrist on November 20, 2014. *Id.* ¶ 99.  Her doctor diagnosed her with carpal tunnel syndrome and "lesion of ulnar nerve", and recommended that she change job duties.  *Id.* ¶ 100.[6]  On November 21, 2014, Baptiste informed defendant of her diagnosis and the doctor's recommendation.  *Id.* ¶ 101.

Although defendant moved Baptiste to the "breast flipping" position, which does not require the use of a knife, she was almost immediately returned to the "wing deboning position." *Id.* ¶¶ 103-04.  Baptiste claims that when she "attempted to communicate to her supervisor that, per her doctor's request and due to the severe pain in her hand, she could not perform the work in

---

[6] The Complaint states that the diagnosis was made on November 20, 2016. *Id.* ¶ 100.  It is apparent that "2016" is a typographical error, and that the Complaint should have stated November 20, 201**4**.

wing deboning", she was immediately terminated. *Id.* ¶¶ 105-06. The termination letter, dated November 24, 2014, states: "Please consider the following notification of termination of employment from Amick Farms, LLC. Effective November 21, 2014. Reason: Performance." *Id.* ¶ 107.

Baptiste also states that during 2014, she "missed work to care for her daughter", who had been "frequently hospitalized" due to a serious medical condition. *Id.* ¶¶ 92-93. Baptiste alleges that she provided defendant with doctors' notes explaining that her absences were attributable to her daughter's medical issues, but that defendant refused to excuse those absences because they were attributable to Baptiste's daughter. *Id.* ¶ 95. Defendant warned Baptiste that "frequent absences would not be tolerated." *Id.* ¶ 96. But, defendant never informed her of her rights under the FMLA. *Id.*

### 4.  Plaintiffs' Claims

Plaintiffs' Complaint alleges three violations of the FMLA. Count I, brought on behalf of the three individually-named plaintiffs, alleges that defendant interfered with and denied their rights under the FMLA. *Id.* ¶¶ 121-33. In particular, the Complaint contends: "By refusing to provide Plaintiffs with Notice of their FMLA rights and eligibility, Defendant intentionally and willfully interfered with, restrained, and/or denied Plaintiffs Olivince, Rios, and Baptiste from exercising or attempting to exercise their rights under the FMLA." *Id.* ¶ 128.

Count II, also brought on behalf of the individually-named plaintiffs, alleges retaliatory discharge. *Id.* ¶¶ 134-38. The Complaint asserts: "Amick Farms improperly prevented Plaintiffs Olivince, Baptiste and Rios from invoking their FMLA rights and [they] were terminated in retaliation for actions that should have been protected under the FMLA." *Id.* ¶ 136.

Count III, the only cause of action brought on behalf of both the individually-named plaintiffs and the collective members, alleges that defendant failed "to post a notice, in a language in which their employees are literate, outlining the FMLA's provisions pursuant to 29 U.S.C. § 2601 et seq. and 29 C.F.R. § 825.300 et seq." *Id.* ¶ 140.  According to the Complaint: "Amick Farm's systematic failures to post a notice of FMLA protections prejudiced the Class Representatives and Class Members as they did not know they had the right to request and/or take protected medical leave" *Id.* ¶ 142.

## II.     Motion to Dismiss

Under Rule 12(b)(6), defendant has moved to dismiss Count III of the Complaint in ELH-16-2938, brought by Olivince, Rios, and Baptiste on behalf of themselves and those similarly situated.  As noted, Count III seeks relief for defendant's alleged failure to post a notice of FMLA rights.  *Id.*, ECF 14.  Amick contends, however, that there is no private right of action to enforce the general notice requirement.  *Id.*, ECF 14-1 at 3.

### A.  Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Goines v. Valley Cmty, Servs, Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The

purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).   But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).   *Twombly*, 550 U.S. at 555.   Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).   If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.   *Twombly*, 550 U.S. at 555.   Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d

473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*,

___ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86

(4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).  But, a court is not required to accept legal

conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "A court

decides whether [the pleading] standard is met by separating the legal conclusions from the

factual allegations, assuming the truth of only the factual allegations, and then determining

whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the

legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011),

*cert. denied*, ___ U.S. ____, 132 S. Ct. 1960 (2012).

## B.  Notice Requirement under the FMLA

"The FMLA requires employers to provide employees with both general and individual

notice about the FMLA."  *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318 (3d Cir. 2014);

*see* 29 U.S.C. § 2619; 29 C.F.R. § 825.300.  The "general notice" requirements of the FMLA are

set forth in 29 U.S.C. § 2619 and 29 C.F.R § 825.300(a).

Section 2619(a) of 29 U.S.C. states:

Each employer shall post and keep posted, in conspicuous places on the premises
of the employer where notices to employees and applicants for employment are
customarily posted, a notice, to be prepared or approved by the Secretary, setting
forth excerpts from, or summaries of, the pertinent provisions of this subchapter
and information pertaining to the filing of a charge.

Critically, § 2619(b) provides: "Any employer that willfully violates this section may be

assessed a civil money penalty not to exceed $100 for each separate offense."

The regulatory provisions are also pertinent.  Section 825.300(a) of 29 C.F.R. states, in

part:

(1) Every employer covered by the FMLA is required to post and keep posted on
its premises, in conspicuous places where employees are employed, a notice

explaining the Act's provisions and providing information concerning the procedures for filing complaints of violations of the Act with the Wage and Hour Division.

Moreover, 29 C.F.R § 825.300(a)(4) states: "Where an employer's workforce is comprised of a significant portion of workers who are not literate in English, the employer shall provide the general notice in a language in which the employees are literate."

Of import here, 29 C.F.R. § 825.402 provides for the enforcement of the general notice requirement.  It states (emphasis added):

> Section 825.300 describes the requirements for covered employers to post a notice for employees that explains the Act's provisions.   *If a representative of the Department of Labor determines that an employer has committed a willful violation of this posting requirement*, and that the imposition of a civil money penalty for such violation is appropriate, *the representative may issue and serve a notice of penalty* on such employer in person or by certified mail. Where service by certified mail is not accepted, notice shall be deemed received on the date of attempted delivery. Where service is not accepted, the notice may be served by regular mail.

In addition to requiring covered employers to post the "general notice" required by 29 U.S.C. § 2619(a) and 29 C.F.R. § 300(a), the regulations require "that employers provide an individual, written notice to affected employees that an absence qualifies under the FMLA." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 301 (4th Cir. 2016).  As the *Lupyan* Court has explained, 761 F.3d at 318, the "individual notice" has several components:

> [O]nce an employer is on notice that an employee is taking FMLA-qualifying leave, the employer must: (1) within five business days notify the employee of his or her eligibility to take FMLA leave, 29 C.F.R. § 825.300(b)(1); (2) notify the employee in writing whether the leave will be designated as FMLA leave, 29 C.F.R. § 825.300(d)(1); (3) provide written notice detailing the employee's obligations under the FMLA and explaining any consequences for failing to meet those obligations, § 825.300(c)(1); and (4) notify the employee of the specific amount of leave that will be counted against the employee's FMLA leave entitlement, § 825.300(d)(6).

Section 825.300(e) of 29 C.F.R. contains the "Consequences of failing to provide notice."

It states, *id.*:

> Failure to follow the notice requirements set forth in this section may constitute
> an interference with, restraint, or denial of the exercise of an employee's FMLA
> rights. An employer may be liable for compensation and benefits lost by reason of
> the violation, for other actual monetary losses sustained as a direct result of the
> violation, and for appropriate equitable or other relief, including employment,
> reinstatement, promotion, or any other relief tailored to the harm suffered[.] *See* §
> 825.400(c).

## C.  Discussion

As noted, Amick has moved to dismiss Count III of the Complaint.  ELH-16-2938, ECF
14-1.  Defendant contends, *id.* at 3: "The penalty for violations of § 2619 is limited to a civil
money penalty. . . .  Nowhere in the statute did Congress create a private right of action for a
violation of 29 U.S.C. § 2619."  Defendant argues, *id.* at 6:

> In creating the FMLA, Congress established an elaborate enforcement and
> remedial scheme. It specifically decided that there would be no private right of
> action for violation of the posting requirement, and instead weighed the relative
> importance of the posting requirement against the appropriate enforcement
> mechanism. That enforcement mechanism is a civil penalty, not a private cause of
> action.  The Court should not disrupt the remedial balance struck by Congress.

Furthermore, defendant notes that although a "failure to abide by the other FMLA notice
requirements may result in unlawful interference or retaliation, 29 C.F.R. § 825.300(e), for
which a private cause of action exists, 29 U.S.C. § 2917(a)(2)," the Department of Labor is
vested with the exclusive enforcement of the general posting requirement.  *Id.*; *see* 29 C.F.R. §
825.402 (describing the process for the Department of Labor to seek civil penalties against
employers for failure to comply with the general notice requirement of § 825.300).  Defendant
states, *id.* at 4: "To the extent Plaintiffs assert that 29 C.F.R. § 825.300(e) applies to the general
posting requirement, the regulation is inconsistent with and contrary to the statute."

Citing 29 C.F.R. § 825.300(e), plaintiffs maintain that there is a private right of action to enforce the general notice requirement of the FMLA and its implementing regulations.  ECF 19. at 7-8.  They argue that, in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 84 (2002), the Supreme Court "made clear that an employee may have a private right of action for violations of the FMLA's notice provisions where 'the employee has been prejudiced by the violation….'" ECF 19 at 9 (quoting *Ragsdale*, 535 U.S. at 89).  Plaintiffs assert, ECF 19 at 9: "In fact, the Supreme Court observed that it 'may be reasonable' to conclude that an employer's failure to comply with notice requirements may deny, restrain, or interfere with an employee's exercise of her right to take leave where the employee suffers prejudice as a result of the employer's breach, thus giving rise to a viable interference claim."

In its reply, defendant contends that plaintiffs have failed to distinguish between the general notice requirements and the individual notice requirements of the FMLA and its implementing regulations.  *See* ECF 20 at 2-3.  According to defendant, "*Ragsdale*, along with other cases cited by Plaintiffs, stands for the proposition that an employee must show prejudice in order to bring a cause of action for an employer's failure to provide individualized notice, not the failure to post the general notice."  *Id.* at 2 (emphasis in original).  In particular, Amick claims that the *Ragsdale* Court recognized that a civil fine is the exclusive enforcement mechanism for a violation of the general notice requirement.  *Id.* at 2.

In assessing the meaning of a statute, courts begin with the text of the statute.  *Raplee v. United States*, 842 F.3d 328, 332 (4th Cir. 2016) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)).  "If the meaning of the text is plain—in other words, if it bears only one reasonable interpretation—that meaning controls."  *Raplee*, 842 F.3d at 332.  And, "'[t]o determine a statute's plain meaning, we not only look to the language itself, but also the specific context in

-14-

which that language is used, and the broader context of the statute as a whole.'" *United States v.*
*Serafini*, 826 F.3d 146, 149 (4th Cir. 2016) (citation omitted).

The statutory language of 29 U.S.C. § 2619 is clear and unambiguous.  Section 2619(b)
provides that the penalty for failing to post the general notice is "a civil money penalty not to
exceed $100 for each separate offense."  Section 2619(b) "assesses only a civil penalty and does
not authorize private damages for a willful violation of [its] requirements." *Latella v. Nat'l*
*Passenger R.R. Corp. (Amtrak)*, 94 F. Supp. 2d 186, 189 (D. Conn. 1999) (citing *Hendry v. GTE*
*North, Inc.*, 896 F. Supp. 816, 828 (N.D. Ind. 1995)).

Moreover, courts accord "considerable weight" to "an executive department's
construction of a statutory scheme it is entrusted to administer,[1]" and they defer to
"administrative interpretations." *Chevron, U.S.A, Inc. v. Natural Resources Defense Council,*
*Inc.*, 467 U.S. 837, 844 (1984).  Because the Secretary of Labor is "explicitly granted" authority
to implement the FMLA under 29 U.S.C. § 2654, the agency's regulations "'are given
controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'"
*Miller v. AT&T Corp.*, 250 F.3d 820, 833 (4th Cir. 2001) (quoting *Chevron*, 467 U.S. at 844).

In *Ragsdale*, 535 U.S. at 90, the Supreme Court recognized that it "may be reasonable" to
find that an "employer's failure to give the notice required by the regulation could be said to
'deny,' 'restrain,' or 'interfere with' the employee's exercise of her right to take intermittent
leave."  However, this statement referred to the petitioner's argument that "an employer's failure
to comply with the *designation requirement* might sometimes burden an employee's exercise of
basic FMLA rights in violation of § 2615."  *Id.* at 89 (emphasis added).  This assertion seems to
pertain to a component of the individualized notice required by under the FMLA, pursuant to 29
C.F.R. § 825.300(d), *i.e.*, the "Designation notice," by which an employee is to be informed as to

whether the leave will be designated as FMLA leave, and not to the general notice requirement under 29 U.S.C. § 2619(a) and 29 C.F.R. § 300(a).  *See Ragsdale*, 535 U.S. at 90 (describing a hypothetical whereby an employee is not notified that "her absence qualifies as FMLA leave"). Indeed, the Supreme Court said in *Ragsdale*, 535 U.S. at 95: "Congress believed that a $100 fine, **enforced by the Secretary,** was the appropriate penalty for willful violations of the only notice requirement specified in the statute."  (Emphasis added).

The structure of the regulations implementing the FMLA supports the conclusion that there is no private right of action to enforce the general notice provision. Section 825.402 of 29 C.F.R., titled "Violations of the posting requirement," provides the procedures by which the Department of Labor can enforce the notice requirements of § 825.300.   Notably, § 825.402 appears only to reference the general notice requirement.

To my knowledge, the Fourth Circuit has not taken a position on this matter.   But, various district courts have found that "'it is well settled that an employee has no private right of action where an employer has failed to post the [required FMLA] notice.'"  *Gilmore v. Univ. of Rochester*, 654 F. Supp. 2d 141, 147 (W.D.N.Y. 2009) (quoting *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 473 (W.D. Pa. 2008)) (alteration in *Gilmore*); *accord Deily v. Waste Mgmt. of Allentown*, 118 F. Supp. 2d 539, 544 (E.D. Pa. 2000), *aff'd*, 55 Fed. App'x 605 (3d Cir. 2003)); *see also, e.g.*, *Yetman v. Capital Dist. Transp. Auth.*, No. 1:12-CV-1670 GTS/CFH, 2015 WL 4508362, at *11 (N.D.N.Y. July 23, 2015) (noting that there is no private right of action for failure to post an FMLA notice), *aff'd*, No. 15-2683, 2016 WL 6242924 (2d Cir. Oct. 25, 2016); *Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist.*, No. 6:07-CV-235 DNH/GJD, 2008 WL 111174, at *5 n.14 (N.D.N.Y. Jan. 7, 2008) ("The court notes that the FMLA provides a statutory penalty for employers who fail to willfully fail to post notice of the pertinent FMLA

provisions . . . .   It has been held that section 2619, itself, does not impose a private right of action by the employee.") (emphasis and citation omitted); *Jessie v. Carter Health Care Ctr., Inc.*, 926 F. Supp. 613, 617 (E.D. Ky. 1996) ("[A] private right of action does not exist for a violation of the [general] notice requirement.").

Plaintiffs rely heavily upon *Mena-Valdez v. E.M. T-Shirts Distributors, Inc.*, 878 F. Supp. 2d 357, 362 (D.P.R. 2012), for the proposition that although "an employee may not have a private right of action for a technical violation of FMLA notice requirements under 29 U.S.C.§ 2619(a), that employee certainly has a cause of action under 29 U.S.C. § 2617(a), if the lack of general notice interfered with her FMLA rights."  ECF 19 at 11.  But, as defendant notes (ECF 20 at 3), the *Mena-Valdez* Court seemed to conflate the general notice requirement with the individual notice requirement.

In *Mena-Valdez*, the defendant failed to post the general notice **and** failed to provide the individual notice after the plaintiff requested medical leave.  878 F. Supp. 2d at 362-63.  And, the authority cited by the court in *Mena-Valdez* references prejudice caused by the failure of an employer to provide the individual notice, not the failure to provide the general notice.  *See Ragsdale*, 535 U.S. at 89-90 ("Ragsdale contends . . . that an employer's failure to comply with the designation requirement might sometimes burden an employee's exercise of basic FMLA rights in violation of § 2615."); and *Dube v. J.P. Morgan Investor Servs.*, 201 Fed. App'x 786, 788 (1st Cir. 2006) (stating that plaintiff "also complains that JPMIS did not provide him with **adequate individual notice of his rights or duties under the FMLA** once he announced his need for leave, as required by 29 C.F.R. § 825.301(b), nor did it discuss the FMLA with him.") (emphasis added).

-17-

I conclude that 29 U.S.C. § 2619 and 29 C.F.R. § 825.300(a) do not create a private right of action based on an employer's failure to post the general FMLA notice required by these provisions. And, 29 C.F.R. § 825.300(e) does not give rise to a private cause of action for an employer's failure to comply with the general notice requirement, because that construction is inconsistent with the statute. *Cf. Chevron*, 467 U.S. at 843 n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent"). Accordingly, dismissal of Count III of the Complaint in ELH-16-2938 is appropriate under Rule 12(b)(6).

Because Count III is the only claim pertaining to the collective active, the collective action shall be dismissed as well. However, the dismissal of the opt-in plaintiffs in the collective action shall be without prejudice to their right to pursue other claims in this or other cases, consistent with the relevant statutes and the Federal Rules of Civil Procedure.

### III.      Motion to Consolidate and Motion to Sever

The plaintiffs in ELH-16-2444 and ELH-16-2938 seek to consolidate the cases, pursuant to Fed. R. Civ. P. 42(a). ECF 7, ELH-16-2444; ECF 8, ELH-16-2938. Amick opposes the consolidation and also seeks to sever the cases of the three named plaintiffs in ELH-16-2938, pursuant to Fed. R. Civ. P. 21. ECF 8 at 10-12, ELH-16-2444; ECF 9, ELH-16-2938. The plaintiffs in ELH-16-2938 oppose the severance. ECF 11, ELH-16-2444; ECF 13, ELH-16-2938.[7]

Fed. R. Civ. P. 42 provides:

(a) CONSOLIDATION. If actions before the court involve a common question of law or fact, the court may:

---

[7] The same filings were submitted in all cases. As indicated, I shall cite only to submissions in case ELH-16-2444, unless otherwise noted.

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

(b) SEPARATE TRIALS.  For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.

"Federal Rule of Civil Procedure 42(a) permits, but does not mandate, consolidation of cases that involve a common question of law or fact."  *CX Reinsurance Co. v. Leader Realty Co.*, No. CV JKB-15-3054, 2016 WL 6696050, at *1 (D. Md. Nov. 15, 2016).  The district court is vested with "broad discretion to decide whether consolidation under Rule 42(a) would be desirable . . . ."  9A C. WRIGHT & A. MILLER, FED. PRAC. & PROC. CIV. § 2383 (3d ed.) at 26 ("Wright & Miller"); *see also, e.g.*, *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 959 (4th Cir. 1999) (noting the discretion of the district court under Rule 42(a)).

In making its determination, a district court must "weigh the saving of time and effort that consolidation under Rule 42(a) would produce against any inconvenience, delay, or expense that it would cause for the litigants and the trial judge."  Wright & Miller § 2383 at 35-36.  The Fourth Circuit has said:

The critical question for the district court in the final analysis was whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *cert. denied*, 460 U.S. 1102 (1983); *see also, e.g.*, *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990) (applying the *Arnold* factors); *CX Reinsurance Co.*, 2016 WL 6696050 at *1-2; *CSX Transp., Inc. v. Alban Waste*, LLC, No. CIV. JKB-13-1770, 2014 WL 1340041, at *2 (D. Md. Apr. 2,

2014); *Dring v. Faust*, No. CIV. WDQ-12-2344, 2013 WL 657638, at *1 (D. Md. Feb. 21, 2013).

Notably, "the mere fact that a common question is present, and that consolidation therefore is permissible under Rule 42(a), does not mean that the trial court judge must order consolidation.[]" Wright & Miller, § 2383 at 39-40.  Moreover, a court need not consolidate for trial, but may instead consolidate cases "in their pretrial stage" as "a desirable administrative technique . . . .[]" *Id.* § 2382 at 19; *see also Rishell v. Computer Scis. Corp.*, No. 1:13-CV-931, 2014 WL 11515835, at *1 (E.D. Va. Apr. 4, 2014) ("[I]ncluded within [a district court's] discretion is consolidation for discovery and pre-trial purposes.").

Fed. R. Civ. P. 20 is also pertinent.  Rule 20(a)(1) provides:

(a) PERSONS WHO MAY JOIN OR BE JOINED.

  (1) *Plaintiffs*.  Persons may join in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all plaintiffs will arise in the action.

Furthermore, Rule 20(a)(3) states: "Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities."

Rule 21 is titled "Misjoinder and Nonjoinder of Parties."  It provides, in relevant part: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party."  Parties are considered to be

"misjoined" under Rule 21 "when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a).[]" WRIGHT & MILLER § 1683 at 21.

District courts have "broad discretion in deciding whether to grant severance." *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007); *see also Tinsley v. Streich*, 143 F. Supp. 3d 450, 462 (W.D. Va. 2015) ("Even if a court finds that the parties are properly joined in a case, it has discretion to sever the claims against the parties pursuant to Rule 21 of the Federal Rules of Civil Procedure."); *Cramer v. Walley*, No. 5:14-CV-03857-JMC, 2015 WL 3968155, at *5 (D.S.C. June 30, 2015) ("A court severing claims against parties to a suit under Rule 21 has virtually unfettered discretion in determining whether or not severance is appropriate.") (internal quotations omitted).  And, district courts in the Fourth Circuit use the same four-factor test for considering severance as is used for considering consolidation.  *See Arnold*, 681 F.2d at 193.

Here, plaintiffs seek the consolidation of two pending cases lodged against the same defendant.  *See* ECF 7, ELH-16-2444.  According to plaintiffs, consolidation is "appropriate" because the cases "involve similar factual circumstances, the same relevant witnesses, and identical legal claims, raising common questions of facts and law." *Id.*, ECF 7-1 at 7.

In particular, plaintiffs allege that they all worked for Amick at the same facility; they all suffered from various health conditions; they reported those conditions to management; they furnished management with relevant medical records; and defendant failed to provide them with a notice of their FMLA rights in a language in which they were literate. *Id.* at 7-8.  Further, plaintiffs state that they were all forced to miss work because of their serious health conditions, that defendant interfered with the plaintiffs' abilities to exercise their right to take FMLA leave,

and all of the plaintiffs were "terminated or otherwise retaliated against for exercising their FMLA rights." *Id.* at 8.

In addition, plaintiffs assert that the cases involve common questions of law or fact. *Id.* at 8-9. In this regard, they note that the "complaints raise the same three counts of action: (1) willful interference with the exercise of FMLA rights, in violation of 29 U.S.C. § 2615; (2) retaliatory discharge, in violation of 29 U.S.C. § 2615; and (3) failure to post and provide notice of FMLA rights, in violation of 26 C.F.R. § 825.300 *et seq.*" *Id.* at 8. On this basis, they argue, *id.* at 9:

> Consolidation will avoid the needless duplication of discovery efforts, including multiple depositions of the same witnesses and the costs associated with hiring translators, trial preparation and needed translators, and litigation costs. Because of the similarity of their claims, Plaintiffs expect to rely on much of the same evidence, including many of the same documents and depositions of the same witnesses.

In its Opposition, defendant argues that although there may be some similarities among the cases, consolidation is not appropriate because "[e]ach Plaintiff will have to prove he or she was afflicted with an FMLA-qualifying condition." ECF 8 at 5 (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001)). Amick contends, *id.* at 5: "There is no commonality of law or fact when the inquiry turns to whether Plaintiffs had 'serious health conditions' as defined under the FMLA." Defendant points out that plaintiffs will "each have to show that they were harmed or prejudiced as a result." *Id.* at 7. Amick adds, *id.* at 6-7: "The evidence on these issues will be vastly different, and the significance of this disparity is that consolidation would cause confusion on the threshold issue as to whether each individual Plaintiff was entitled to FMLA." In addition, Amick contends, *id.* at 7: "The specific documentation provided and the details of communication between the employer and the employee will be vastly different for each."

With respect to plaintiffs' claims of retaliatory discharge, defendant asserts that, under the burden-shifting framework of the statute, "each Plaintiff must make a *prima facie* showing 'that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.'" *Id.* (quoting *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006)).  Defendant argues: "The specifics of the alleged protected activity, adverse action, and causation will be discrete for each Plaintiff."  ECF 8 at 8.  And, as to the claims for failure to post, defendant contends that "the jury is likely to be confused by claims of illiteracy by all Plaintiffs if only some can establish illiteracy." *Id.*

Amick also insists that it will be prejudiced if the cases are consolidated for trial.  It asserts: "Amick is entitled to present its defenses to each Plaintiff's claims separately, without risk of confusion or introduction of irrelevant facts or issues. If it is precluded from doing so, Amick will be prejudiced by the confusion caused by the consolidation." *Id.* at 10.  Further, Amick maintains that "the jury could consider the documentation in the aggregate to incorrectly determine that all Plaintiffs' satisfied the notification burden [which] will greatly prejudice Amick." *Id.* at 7.

In their reply, plaintiffs reassert that the balance of factors supports consolidation.  ECF 11 at 5-7.  In their view, "the facts are straightforward and concern matters with which the jury will have experience and familiarity." *Id.* at 6.  Moreover, plaintiffs maintain that "the burden on the court and the parties will be significant if the matters are not consolidated." *Id.*  They observe that the parties will be required to engage in duplicate discovery with the same witnesses in cases with similar issues and for which "the court will be required to rule multiple times on identical questions of law." *Id.*

Further, defendant argues that severance in case ELH-16-2938 is appropriate as to the three plaintiffs because the similarities in the claims are "superficial at best."  ECF 8 at 12, ELH-16-2444 (internal quotations omitted).   In Amick's view, the issues involve "particularly individualized assessments" on the key question of whether each plaintiff was entitled to leave under the FMLA.   *Id.*   Likewise, defendant argues that the case involves individualized assessments as to "whether the distinct facts alleged by each of the employees gives rise to liability for the various claims they have each stated under the FMLA, which Plaintiffs themselves have characterized differently in their various complaints."   *Id.*   Given the individualized assessments required for each plaintiff, defendant contends that trying the three plaintiffs together will lead to juror confusion and otherwise prejudice the defendant.  *Id.*

According to plaintiffs, "Olivince, Jean Baptiste and Rios share common questions of law and fact, and raise the same three counts against Defendants as they suffered similar injuries caused by the same harm."  ECF 11 at 11.   Plaintiffs state: "As such, their claims are not 'so distinct and separable' from the others that they should be severed."  *Id.*   They conclude that "the common issues of fact and law outweigh any potential risk of prejudice or confusion of the jury." *Id.*

Amick relies on *Engler v. Harris Corp.*, GLR-11-3597, 2012 WL 5193818, at \*3 (D. Md. Oct. 18, 2012), in which Judge Russell determined that severance was appropriate as to three plaintiffs in a Title VII sex discrimination case.   *See* ECF 8 at 11, ELH-16-2444.   In my view, *Engler* is distinguishable.

In *Engler*, three plaintiffs joined in bringing a discrimination suit against the same employer.  *Engler*, 2012 WL 5193818 at \*1.   The plaintiffs' claims were intensely fact-specific.

Although the plaintiffs worked for the same company, they reported to different supervisors and complained of discrimination perpetrated by different individuals under different circumstances.

Judge Russell observed that "the Fourth Circuit has found that when the misconduct in all of the plaintiffs' cases in a lawsuit is virtually identical, severance is inappropriate because the need for judicial economy outweighs the risk of prejudice and possible jury confusion." *Id.* at *4 (citing *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 980–82 (4th Cir. 1997)).  He continued: "Conversely, when the misconduct in each plaintiff's allegations in a discrimination lawsuit is based on different sets of facts, courts have found severance to be appropriate because the risk of prejudice and jury confusion outweighs any benefit to judicial economy." *Engler*, 2015 WL 5193818 at *4.  Applying this standard to the facts of the *Engler* case, Judge Russell determined that severance was appropriate. *Id.* at *5.  He said, *id.*:

> While there are similarities between Plaintiffs' claims (e.g., all three Plaintiffs have remaining retaliation claims; two of the Plaintiffs have remaining gender discrimination claims; all three Plaintiffs worked in the same division at Harris; the time period during which Plaintiffs worked at Harris overlaps; and all three Plaintiffs are represented by the same attorney), each Plaintiff submitted claims under a separate and distinct set of facts.

To be sure, each plaintiff here must prove his or her case.  Among other things, each plaintiff must prove, *inter alia*, that he or she had a serious medical condition and that he or she provided notice to defendant.  That one plaintiff had a serious medical problem or gave notice does not establish the merits of another person's claim.  But, the plaintiffs in both cases allege the same causes of action based on the same course of conduct.  Each plaintiff alleges that Amick terminates employees based on a point system, and that each employee here received points for absences, even when the absences were covered under the FMLA. *See, e.g.*, ECF 1 ¶¶ 39-41 in ELH-16-2444; ECF 1 ¶¶ 50-51 in ELH-16-2938.  The alleged point system is implicated in both cases.

In my view, consolidation of the two cases is appropriate.  As noted, the Fourth Circuit considers four factors in considering motions to consolidate or to sever.  In *Arnold*, *supra*, 681 F.2d at 193, the Fourth Circuit said:

> The critical question for the district court in the final analysis was whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Consolidation will minimize duplication of discovery and thus reduce time and costs associated with discovery.  Consolidation will also avoid duplication of trial testimony, conserve judicial resources, and reduce expenses associated with trial.  By enabling the Court to conduct only one trial, consolidation will avoid inconvenience to witnesses for both sides, who would otherwise be required to attend two trials.  And, it will enable the Court to devote time to other cases.  Further, it will avoid the need for imposition on additional jurors who would otherwise be needed if there were separate trials.

Moreover, four plaintiffs is not so many as to create undue difficulties in case management or prejudice to Amick.  Notably, the consolidation of the cases will not jeopardize defendant's ability to defend itself against each of the plaintiffs based on the individual circumstances.  And, the Court is confident that it will be able to instruct the jury that each plaintiff must prove his or her case, and that a finding of liability, if any, for one plaintiff has no bearing as to the case of another plaintiff.

## IV.     Conclusion

In light of the foregoing, I shall GRANT defendant's Motion to Dismiss Count III.  *See* ECF 14 in ELH-16-2938.  Furthermore, I shall GRANT plaintiffs' Motion to Consolidate.  *See*

ECF 7 in ELH-16-2444; ECF 8 in ELH-16-2938.   And, I shall DENY defendant's Motion to Sever.  *See* ECF 9 in ELH-16-2938.

An Order follows, consistent with this Memorandum Opinion.

Date:  January 6, 2017

_____/s/_____
Ellen L. Hollander
United States District Judge